UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:05-CV-59-R

TERESA MAY and
RAYMOND MAY                                                                            PLAINTIFFS

v.

IODP, LLC
and
JOHN DOE, Unknown Defendant                                                            DEFENDANTS

### MEMORANDUM OPINION

This matter comes before the Court on a Motion for Summary Judgment from Defendant IODP, LLP ("IODP") (Docket #30). The Plaintiffs have responded (Docket #31), and Defendant IODP has replied to the Plaintiffs' response (Docket #33). This matter is now ripe for adjudication. For the following reasons, the Defendants' Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.

### BACKGROUND

Plaintiff Teresa May ("Teresa") claims that she was injured while attending a Lynyrd Skynyrd concert promoted by IODP at J.R.'s Executive Inn on March 13, 2004. Teresa is physically handicapped and usually uses a scooter to assist with her mobility. Teresa attended the concert with some friends, but did not order the tickets or arrange for handicap accommodations herself. Rather, Teresa's fellow concertgoer, Debra Slover, ordered the tickets and was informed that there was no handicapped seating available at the concert. IODP did not provide a separate seating area for handicapped individuals, but allowed handicapped individuals to replace their seat with a standard wheelchair. Upon Teresa's arrival at the concert, she was

told that, for fire safety reasons, she was not allowed to leave her scooter in the aisle while she sat in her purchased seat.  Teresa agreed to have her scooter moved away from the aisle to a secure area beside the stage while she viewed the concert.  Teresa was told that, had she brought a wheelchair, her seating and mobility needs could have been accommodated.

      At the beginning of the concert, the aisle and seating area near Teresa's seat were not overly crowded, and she did not feel concerned for her safety.  The seats, however, were close to the stage, and as the concert progressed, concertgoers pressed further forward near the band.  As a result, the area near Teresa's seat became crowded.  Neither Teresa nor her companions at the concert observed any of IODP's security personnel engaging in crowd control in the area at that time, except once at the beginning of the show.  Teresa states that, because of the crowd and the unavailability of her scooter, she was unable to move.  Teresa and her companions describe the crowd as such that, even if she had her scooter or was not physically handicapped, Teresa would have had extreme difficulty moving anywhere quickly.

      John Doe, the unidentified defendant in this matter, was one of the concertgoers who pressed forward into the aisles as the concert progressed.  Teresa and her companions state that John Doe appeared very intoxicated and pushed his way into the aisle and seating area.  He eventually climbed on the chair in front of Teresa, stood up, and fell over the chair and onto Teresa.  Teresa claims that she was injured at this time, though she did not seek medical treatment until later.

      Teresa claims that her injuries stem from IODP's negligence, as well as John Doe's negligence.  Plaintiffs allege that IODP had a duty to control the crowd around Teresa and keep her safe from foreseeable injuries from the crowd at the concert.  Plaintiffs contend that a

violation of the Americans with Disabilities Act ("ADA") either sets the standard for IODP's negligence *per se* or at least is evidence of IODP's negligence. The Plaintiffs also request injunctive and monetary relief as they seek to enforce the ADA against IODP. Lastly, Teresa's husband, Raymond May ("Raymond") seeks recovery from IODP for loss of consortium and the wages he lost in taking time to care for his wife after her injury at the concert.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)). "The plaintiff must present more than a mere scintilla of evidence in support of her position; the plaintiff must present 'evidence on which the jury could reasonably find for the plaintiff.'" *Id.* (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment. "The mere existence of a

colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.,* 90 F. 3d 1173, 1177 (6th Cir. 1996) (citing *Anderson*, 477 U.S. at 247-49). Finally, while Kentucky state law is applicable to some claims in this case pursuant to *Erie Railroad*, a federal court in a diversity action applies the standards of the Federal Rules of Civil Procedure, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, Ky., 807 S.W.2d 476 (1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993). FED. R. CIV. P. 56; *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938).

## DISCUSSION

### A.   Common Law Negligence Claims

To prevail on their common law negligence claims against the IODP under Kentucky law, the Plaintiffs must show: (1) that the Defendant owed the Plaintiffs a duty of care; (2) that the Defendant breached that standard of care; and (3) that the Plaintiffs sustained injuries caused by the Defendant's breach. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88-89 (Ky. 2003). The Court must determine, as a matter of law, whether and to what extent IODP owed the Plaintiffs a duty of care. *Id.* (citing *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992)).

### 1.   Existence of a Duty

A proprietor of a place of amusement has an affirmative legal duty to use reasonable care to protect the patrons from harm. *Napper v. Kenwood Drive-In Theater Co.*, 310 S.W.2d 270,

271 (Ky. 1958). At issue here is what constitutes reasonable care. Plaintiffs contend that, if IODP were acting reasonably, it would have provided special, safer seating for any known handicapped patrons and would have better controlled the crowds near the stage.

Both parties cite Kentucky law stating that "[t]he law places no duty on the proprietors of amusement places to prevent overcrowding of their premises but it only requires them to guard against danger likely to arise therefrom.." *Phoenix Amusement Co. v. White*, 208 S.W.2d 64, 66 (Ky. 1968) (citations omitted). As IODP notes, "[t]he most important factor in determining whether a duty exists is foreseeability." *Pathways,* 113 S.W.3d at 89 (quoting David J. Leibson, KENTUCKY PRACTICE*, Tort Law* § 10.3 (West Group 1995)). IODP's duty was not to insure its patrons' safety from all causes of harm, but to merely protect against dangers about which it knew or should have known. *Noonan v. Sheridan*, 18 S.W.2d 976, 977-78 (Ky. 1929) (citing *Bridgford v. Stewart Dry Goods Co.,* 231 S.W. 22 (Ky. 1921); *see also Cain v. Stevens*, 274 S.W.2d 480, 482-83 (Ky. 1955) (holding that a property owner has no absolute duty to prevent third persons from causing harm to another on the property). Similarly, IODP was not negligent in failing to control the behavior of John Doe, a patron of IODP simply because he may have caused a danger to other concertgoers. *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840, 849 (Ky. 2005) (holding that a "special relationship," such as an employment relationship, must exist for an entity to have a duty to control a tortfeasor). Thus, IODP is only negligent if it should have foreseen that the crowding caused a likelihood of danger to known handicapped and nonhandicapped patrons, yet did nothing about it, breaching the duty.

5

**2.** **Breach of a Duty**

IODP claims that the Plaintiff's negligence claims should fail because, as a matter of law, no facts may be shown which indicate that IODP breached its duty of reasonable care. Generally, whether a breach of a duty occurred is an issue to be decided by a factfinder. *Pathways,* 113 S.W.3d at 89 (citing *Lewis v. B & R Corp.*, 56 S.W.3d 432 (Ky. App. 2001)). In similar cases, Kentucky courts held that a proprietor of a place of amusement has not breached his duty of reasonable care when one patron suddenly and intentionally attacked another in a crowded room, or when boisterous patrons behaved unexpectedly and intentionally attacked a different patron than the one they were originally threatening. *Murphy v. Second St. Corp.,* 48 S.W.3d 571, 574 (Ky. App. 1958); *Napper*, 310 S.W.2d at 271. These cases are distinguishable from the present one in that the patrons were injured by the intentional act of another patron and the plaintiffs were not in foreseeably dangerous situations. *See Noonan*, 18 S.W.2d at 978 ("It is the general rule that an independent act of negligence by a third part[y] is an occurrence which the defendant is not as a general rule bound to anticipate, and especially is this so where the independent act is the willful act of a third party.").

At this time, Plaintiffs persuade the Court that a factfinder might determine that IODP's duty of reasonable care had been breached in the present scenario. In *dicta*, the Kentucky Court of Appeals indicated that a proprietor of a theater might be held negligent where the theater was overcrowded and the crowd was shoving and boisterous; this would have made an injury of a patron resulting from the unruly crowd a foreseeable injury, which a proprietor would reasonably take care to prevent. *Phoenix Amusement*, 208 S.W.2d at 363-64 (holding that the proprietor of an overcrowded venue was not negligent when the crowd did not appear dangerous or unruly yet

the plaintiff was injured in part because of the crowd.)  The Plaintiffs also cite a South Carolina case holding a proprietor of a place of amusement negligent in a factual scenario very similar to the present one. *Greenville Mem'l Auditorium v. Martin*, 391 S.E.2d 546 (S.C. 1990) (holding that where there was evidence of a lack of crowd control at a concert, the venue could be held liable for the injury of a patron who was hit by a bottle at the concert by an unknown person). Thus, whether IODP breached its duty to Plaintiffs cannot be decided as a matter of law, and must be determined by a factfinder.  At this time the Court is uncertain as to the exact action of the crowd prior to the incident.  With that uncertainty, this Court cannot grant judgment as a matter of law.  A better evaluation can be made at the close of the evidence.

**3.      Causation of Injury**

Causation of injury is a mixed question of law and fact which present issues for both the judge and the factfinder. *Pathways,* 113 S.W.3d at 89 (citing *Deutsch v. Schein*, 597 S.W.2d 141 (Ky. 1980)). IODP claims that, even if an issue of fact exists about whether it breached its duty, Plaintiffs' common law negligence claims should be decided as a matter of law because no issues of fact exist with regard to the causation of Teresa's injury.  First, IODP notes that, according to Teresa's deposition, she would have been unable to move to avoid injury even if she were not handicapped or had her scooter.  Therefore, the Court finds that any violation of the ADA fails to show negligence, as Teresa's handicap had nothing to do with her injury.  Complete compliance with the ADA, such as designation of particular seats for the handicapped, would not have prevented this accident.  A showing of noncompliance would not support a finding of negligence, since noncompliance with the ADA would not have had any causal effect on Teresa's injury. Similarly, as Teresa states she would likely have been injured even if she had her scooter,

7

IODP's refusal to allow her to keep her scooter or mobility equipment is irrelevant to a claim of negligence. Even if Teresa was supplied all accommodations she requested for her disability, she still would likely have been injured.

A question of fact still exists, however, as to whether the lack of crowd control by IODP constitutes a breach of a IODP's duty of care and whether this lack of crowd control is also a proximate cause of the injury. A factfinder could certainly conclude that this is the case. A proprietor may be held liable to a patron for the conduct of another patron if the conduct of that other patron was such that a reasonable person could conclude that an injury might occur because of the actions or conduct of that other patron. *Murphy,* 48 S.W.3d at 574. Even so, summary judgment may still be inappropriate on common law negligence claims because any negligence by IODP might be overcome by an intervening cause.

Kentucky law requires six factors to be present for an intervening actor's conduct to absolve a negligent actor from liability:

> (1) an act or event that intervenes between the original act and the injury;
> (2) the intervening act or event must be of independent origin, unassociated with the original act;
> (3) the intervening act or event must, itself, be capable of bringing about the injury;
> (4) the intervening act or event must not have been reasonably foreseeable by the original actor;
> (5) the intervening act or event involves the unforeseen negligence of a third party [one other than the first party original actor or the second party plaintiff] or the intervention of a natural force; and
> (6) the original act must, in itself, be a substantial factor in causing the injury, not a remote cause. The original act must not merely create a negligent condition or occasion; the distinction between a legal cause and a mere condition being foreseeability of injury.

*NKC Hosps., Inc. v. Anthony,* 849 S.W.2d 564, 568 (Ky. App. 1993).

"The question of whether an undisputed act or circumstance was or was not a superseding cause is a legal issue for the court to resolve, and not a factual question for the jury." *House v. Kellerman*, 519 S.W.2d 380, 382 (Ky. 1974). While the Plaintiffs seem to concede that the first and third elements are present in this case, they convince the Court that IODP has not sufficiently proven the presence of the second, fourth, fifth, and sixth elements. Therefore, the Court determines, as a matter of law, that John Doe's actions cannot serve as an intervening cause exonerating IODP of liability.

    The second element for intervening causation requires that the intervening event, John Doe's boisterous conduct and fall onto Teresa, must be of an independent origin from the overcrowding at the concert. The crowd at the concert was unruly and overcrowded. If the jury finds IODP negligent, they have implicitly determined that the crowded atmosphere at IODP's concert encouraged or affected John Doe's behavior and caused Plaintiff's injury. Since the Court acknowledges that this is a reasonable finding the jury could make, and Court is construing all factual matters in favor of the Plaintiffs, the Court cannot find, as a matter of law, that John Doe's conduct was independent from the overcrowding at the concert. The fourth element requires that IODP could not have foreseen behavior such as John Doe's from a patron. According to all accounts, the concert hall was crowded and the patrons near the stage were rowdy. Again, if the jury finds that IODP was negligent, they have implicitly made the determination that IODP should have foreseen John Doe's behavior because of the boisterous crowd. As this is a reasonable finding of fact, and the Court is construing all facts in favor of the

Plaintiffs, the Court cannot find that John Doe's behavior was unforeseeable as a matter of law. Since John Doe's actions were not unforeseeable as a matter of law, element five is also absent. Lastly, the sixth element has not been sufficiently shown, as the jury might reasonably find it likely that IODP's conduct in not having strict crowd control "merely create[d] a negligent condition or occasion" making John Doe's conduct foreseeable. *Id.* Since this is a possible reasonable interpretation of the facts which is most favorable to the Plaintiff's, the Court cannot find that the atmosphere IODP provided at its concert was not a substantial factor in the causation of Plaitniff's injury. Therefore, the Court does not hold that an intervening cause shields IODP from negligence liability. As questions of fact remain as to whether IODP's act caused Plaintiffs' injuries and whether IODP breached its duty of reasonable care to Plaintiffs, summary judgment is DENIED as to Plaintiff's common law negligence claims.

**B.     Enforcement of the ADA through Monetary Relief**

The Plaintiffs originally requested damages for IODP's alleged violation of the ADA, which not only codifies the guidelines regarding accommodations for the handicapped but also grants remedies to an individual who has been discriminated against. 42 U.S.C. §§ 2000a-3(a), 12188(a)(1). The statutes provide that an aggrieved person may seek preventive injunctive relief. 42 U.S.C. § 12188(a)(1). The statute is silent as to whether monetary relief is available. The Court of Appeals for the Sixth Circuit, however, has determined that the ADA does not authorize monetary relief for an aggrieved person instituting a civil action based on a violation of the ADA. *Smith v. Wal-Mart Stores, Inc.,* 167 F.3d 286, 293 (6th Cir. 1999). Therefore, as a matter of law, Plaintiffs may not recover monetary damages for any violations of the ADA by IODP, and

10

summary judgment is GRANTED.

**C.      Negligence *per se* Claims**

Plaintiffs originally claimed that a violation of the ADA would *per se* show that IODP was negligent in its behavior to Plaintiffs and authorize the Plaintiffs to damages for negligence. The Kentucky common law of negligence *per se* is codified at KRS 446.070. *T & M Jewelry, Inc. v. Hicks ex rel. Hicks*, 189 S.W.3d 526, 530 (Ky. 2006) (*citing Davidson v. American Freightways, Inc.,* 25 S.W.3d 94 (Ky. 2000). That statute provides that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." KY. REV. STAT. ANN. § 446.070 (LexisNexis 2006).

"Any statute," as used in KRS 446.0700, has been interpreted by the Kentucky courts to apply only to Kentucky statutes, not to Federal statutes or local ordinances. *T & M Jewelry*, 189 S.W.3d at 530. "The Kentucky General Assembly did not intend for KRS 446.070 to embrace the whole of federal laws and the laws of other states and thereby confer a private civil remedy for such a vast array of violations." *Id.* The "reach [of KRS 446. 070] is limited to violations of Kentucky statutes and does not extend to federal regulations." *Alderman v. Bradley,* 957 S.W.2d 264, 266 (Ky. App. 1997); *see also Shrout v. The TFE Group*, 161 S.W.3d 351, 355 (Ky. App. 2005).

Further, allowing the Plaintiffs to advance the ADA as determinative of a negligence action for damages would frustrate the legislature's intent, as interpreted by the Sixth Circuit Court of Appeals. As the Sixth Circuit has interpreted the ADA, damages are not an available

remedy for violations. *Smith,* 167 F.3d at 293. To find that the statute could determine a cause of action in negligence *per se* would essentially sidestep the Sixth Circuit's ruling and grant damages as a result of a violation of the ADA in a different way. Therefore, the Court cannot find that the statutory standards in the ADA set the standard of reasonable care to establish negligence on the part of IODP.

Although any violation of the ADA by IODP is not conclusive that Plaintiffs are entitled to damages for negligence, Plaintiffs contend that violations of the ADA might serve as persuasive evidence that IODP breached the applicable standard of reasonable care. In other words, Plaintiff suggests that the standards set out in the ADA, while not determinate of the standard of care, might indicate some aspects of the standard of care. As stated above, since Teresa's injury would likely have occurred regardless of her handicap, violations of the ADA are unlikely to prove a breach of a standard of care relevant to the cause of Teresa's injury. Therefore, as a matter of law, the standards set out in the ADA are irrelevant to any negligence claims the Plaintiffs make. As such, summary judgment is GRANTED as to negligence claims based on or supported by the ADA.

**D.     Enforcement of the ADA through Injunctive Relief**

As discussed in section B. of this Opinion, the ADA does allow aggrieved persons within the purview of the statute to bring civil actions to enforce the ADA through preventive injunctive relief. Teresa, as a handicapped person meant to be protected by the statute, may enforce violations of the ADA regardless of whether they caused her injury in the past. Negligence of IODP is irrelevant to the this claim. IODP considered itself to be bound by the ADA at the time

of Teresa's injury, and does not dispute that Teresa is a person covered by the ADA.

The parties agree that 42 U.S.C. § 12186(b) authorizes the Department of Justice to promulgate regulations governing standards to be used by places of public accommodation in assembly areas. The issue is governed by 28 C.F.R. § 36.308 (2006), which generally requires that reasonable wheelchair seating and seats with removable side-arm rests are provided throughout the seating area, which allow handicapped individuals to choose seats near nonhandicapped individuals with comparable views and prices to other seats.

The statute does not seem to require, and perhaps even prohibits the separate handicapped seating section that Plaintiffs suggest. As IODP notes, a segregated handicapped arrangement may not even be permitted under 42 U.S.C. § 12182(b)(1)(B) and 42 U.S.C. § 12182(b)(2)(A)(iii), which require that handicapped individuals are integrated throughout public areas and are not treated differently from nonhandicapped individuals. As Plaintiffs contend, however, the statute does require that IODP offer a reasonable amount of handicapped seats. Plaintiffs claim that only one handicapped individual other than Teresa was visible to them at the concert. IODP has presented no evidence to the contrary. Debra Slover, Plaintiffs' fellow concertgoer, also states that IODP informed them that either all the handicapped seating was sold out or was unavailable. IODP claims that seating would have been available to Teresa throughout the viewing area if she had brought a wheelchair instead of a scooter. Plaintiffs have raised and IODP has contested an issue of material fact as to whether IODP was in violation of the ADA's handicapped seating regulations on the night of Teresa's injury.

Plaintiffs also contest whether IODP provided handicapped individuals with comparable views of the concert to other patrons. Plaintiffs state that, because of the crowd of standing

13

people surrounding the stage, any patrons who must remain seated, such as Teresa, would be unable to adequately view the show as a standing person would. IODP argues that, while the regulations require similar seating, persuasive evidence suggests that a proprietor of a place of amusement need not consider standing patrons in making reasonable accommodations for the disabled. *Caruso v. Blockbuster-Sony Music Entm't Ctr. at Waterfront,* 193 F.3d 730, 736 (3d Cir. 1999) (addressing a separate but similar statute protecting the handicapped). Whether IODP acted in accordance with the statute at issue in this case, the ADA, is an issue of fact to be presented to the factfinder.

Plaintiffs point to the requirement in 28 C.F.R. § 36.308 (2006) that handicapped individuals be provided a reasonable access and egress to their seats. According to most accounts of the concert, neither able-bodied nor handicapped individuals could easily access and exit their seats because of the crowd. Teresa also could not quickly exit her seat without the use of her scooter, which was parked far away. IODP notes that, if Plaintiff's scooter was made more available to her, IODP would be in violation of fire codes. IODP suggests that it simply provided the best and most reasonable method of ingress and egress allowed by law. Plaintiff has raised a question of fact as to whether the ingress and egress to Teresa's seat was reasonable as required by 28 C.F.R. § 36.308 (2006).

IODP argues that these factual issues under the injunctive relief provision of the ADA need not be decided because Plaintiffs do not have standing to enforce the ADA. IODP does not contest that Teresa is a member of the class of persons protected by the ADA, nor that her husband might also be an "aggrieved person" if his wife were not adequately accommodated under the ADA. *See Turner v. City of Edgewood*, 2006 U.S. App. LEXIS 20602. Instead, IODP

cites persuasive authority of other ADA cases indicating that, in order to have standing and for the issue at present not to be moot, Plaintiffs must at least prove that they would visit IODP's accommodations in the imminent future if not for the barriers to handicapped individuals. *Access for Am., Inc. v. Associated Out-Door Clubs,* 2006 U.S.App LEXIS 16364 (11th Cir. June 27, 2006); *Shotz v. Cates*, 256 F.3d 1077, 1081-82 (11th Cir. 2001).

> The Supreme Court has held that
>
>> the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.
>> *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations and quotations omitted).

Here, Plaintiffs have shown a legally protected interest, but not that the interest would be interfered with imminently. Even if Plaintiffs show that IODP did violate the ADA and that Plaintiffs were actually injured *in the past*, they are only entitled to preventive relief from future injuries under the terms of the statute. Without asserting with some certainty that Plaintiffs might visit another concert promoted by IODP, Plaintiffs have no interest in IODP's accommodations for the handicapped which might be imminently interfered with. Thus, Plaintiffs do not satisfy the first element required for standing. Plaintiffs, in failing to allege that they would attend any of IODP's concerts in the future, also fail to meet the third requirement for standing. With merely the possibility that Plaintiffs might encounter IODP in the uncertain

future, the Court has no concrete issue before it to redress.

This Court holds that, while Plaintiffs might choose to attend a future concert with IODP, they have not asserted that she would do so. The Court does not necessarily say that the Plaintiffs must allege a particular concert or date which she would attend, but that Teresa must at least show with some probability that she might again use IODP's services if they were ascertained to be compliant with the ADA. Since Plaintiffs have not alleged any facts under which prospective injunctive relief would prevent a future injury, they do not have standing to enforce the ADA through preventive injunctive relief. Therefore, summary judgment is **GRANTED** as to the injunctive relief provisions of the ADA.

### E.   Loss of Consortium Claims

The parties agree that Raymond's claims for loss of consortium and lost wages as a result of caring for Teresa fail unless Plaintiffs succeed in showing IODP's negligence. As some issues of fact still remain for decision at trial as to IODP's negligence, summary judgment is **DENIED** as to Raymond's claims.

### CONCLUSION

For the foregoing reasons, IODP's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART.** An appropriate Order shall issue.